IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PHILLIP TOLER,
        Plaintiff,

vs.                            Case No. 3:09cv523/MCR/CJK

CHARLES HALLEY, et al.,
        Defendants.

_____

## REPORT AND RECOMMENDATION

       This prisoner civil rights case is before the Court upon defendants' motion to dismiss for plaintiff's failure to exhaust administrative remedies. (Doc. 58). Plaintiff responded in opposition to the motion (doc. 63), and defendants replied (doc. 68). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After careful consideration, the Court concludes that defendants' motion should be granted and this case dismissed.

## BACKGROUND AND PROCEDURAL HISTORY

       Plaintiff, proceeding *pro se*, commenced this action on November 20, 2009, by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. 1). Now pending is plaintiff's fourth amended complaint. (Doc. 41). Plaintiff is suing seven officials and employees of the Florida Department of Corrections ("DOC"): Charles Halley, Warden of Century Correctional Institution ("Century CI"); Scott Payne, Deputy Warden of Century CI; Pam Brown, Classification Officer at Century CI; Sherri Cason, Regional Director of the DOC; Craig Carter, a Correctional Officer Captain at Century CI; Mrs. Washington, Classification Officer at Century CI; and Mrs.

Bivens, a kitchen supervisor at Century CI.  Plaintiff alleges that in September of 2009, the defendants retaliated against him for complaining about the conditions of his confinement by reassigning him from a job in the prison library to one in the prison kitchen.  (Doc. 41, p. 5).  Plaintiff further alleges that as a result of his preexisting medical conditions and the allegedly inhumane and hazardous working conditions in the prison kitchen, plaintiff passed out, fell and injured himself on October 9, 2009.  (*Id*., pp. 5-6).  Plaintiff asserts that after his fall, the defendants conspired to deprive him of medical care for three weeks.  (*Id*., pp. 6-6A).  Claiming violations of the First, Eighth and Fourteenth Amendments, plaintiff seeks damages and any other relief the Court deems proper.  (*Id.*, p. 7).

All but one of the defendants were served on March 14, 2011.  (Docs. 50-55).  On February 24, 2011, the Court directed the United States Marshals Service to personally serve defendant Cason at the address plaintiff provided.  (Doc. 45).  The summons for defendant Cason was returned unexecuted for the stated reason, "Unable to find a Sherri Cason listed with Fl Dept. of Corrections."  (Doc. 48).  On March 15, 2011, the Court issued an order requiring plaintiff to advise the Court of defendant Cason's address within thirty days.  (Doc. 49).  Plaintiff was warned that failure to do so would result in dismissal of his claims against Cason.  Plaintiff did not respond to the order.

On May 6, 2011, defendants Halley, Payne, Brown, Carter, Washington and Bivens filed a joint motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure, arguing that plaintiff failed to exhaust his administrative remedies before filing this lawsuit.  (Doc. 58).  Plaintiff admits in his response that he did not present any of his claims to prison officials through the administrative grievance process, but

argues that his complaint should not be dismissed because administrative remedies were unavailable to him due to defendants' threats of retaliation. (Doc. 63, pp. 1, 3-4 (citing *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008)). Defendants reply that plaintiff's allegations of threats and retaliation are vague and that they never threatened plaintiff, retaliated against him, or prevented him from filing grievances. Plaintiff simply ignored the grievance requirements. (Doc. 68). Plaintiff's response and defendants' reply are accompanied by supporting affidavits.

DISCUSSION

Procedure for Ruling on a Motion to Dismiss for Failure to Exhaust Administrative Remedies

In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). The court held that the defense of failure to exhaust should be treated as a matter in abatement. *Id*. at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendants' motion, and those in the plaintiff's response. *Id*. If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust

administrative remedies, it must be dismissed." *Id*.; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*.  Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

<u>Exhaustion Requirement</u>

Title 42 U.S.C. § 1997e provides, in relevant part:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory pre-condition to suit.  *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); *see also Porter v. Nussle*,  534 U.S. 516, 524-25, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*,  534 U.S. at 524, 122 S. Ct. 983.  Exhaustion is required whether the plaintiff

seeks declaratory and injunctive relief, monetary damages, or both. *Booth, supra* at 734, 121 S. Ct. at 1825. The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See Booth, supra* at 741 n. 6; *McCarthy v. Madigan*, 503 U.S. 140, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required."); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998). Moreover, the PLRA requires "proper exhaustion," so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2387-88, 165 L. Ed. 2d 368 (2006); *see also id.*, 126 S.Ct. at 2388 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). A court must dismiss an action if satisfied that the plaintiff failed to properly exhaust his available administrative remedies prior to filing suit. *Higginbottom v. Carter,* 223 F.3d 1259, 1261 (11th Cir. 2000); *Alexander*, 159 F.3d at 1325-26.

The grievance procedures promulgated by the Florida DOC require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. FLA. ADMIN. CODE r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11th Cir. 2010). If an inmate is filing a medical grievance, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance at the institution. *See* FLA. ADMIN. CODE r. 33-103.006(3)(e). This is known as a formal "Grievance of a Medical Nature." *Id.* at r. 33-103.008. If the inmate is dissatisfied with the result of

the medical formal grievance (*e.g.*, if it is denied), the inmate is authorized to appeal to the Office of the Secretary.  *Id.* at r. 33-103.007.

A prison official's serious threat of substantial retaliation against a prisoner for lodging a grievance could make the administrative remedy "unavailable," for purposes of the PLRA's exhaustion requirement.  *Turner*, 541 F.3d at 1085.  In *Turner*, a Georgia inmate filed a civil rights action against various prison officials claiming "he had been subjected to cruel and unusual punishment as a result of an incident in which he was deliberately exposed to electrical shock." *Turner*, 541 F.3d at 1080.  Turner submitted a formal grievance, but just a few days later the Warden called Turner "to security" and told him that if Turner did not "like the way they did things around here he would put" Turner in a van and transfer him so he "would never be able to see [his] family again till [he] got out of the Georgia Prison System." *Id.* at 1081.  The Warden then "tore up Turner's complaint in front of him and said that he 'had better not hear of another grievance or lawsuit pertaining to [Turner] getting shocked.'"  *Id*.  When Turner filed his civil rights complaint, the defendants sought dismissal on the basis that Turner failed to exhaust administrative remedies. The Magistrate Judge agreed, laid out three options plaintiff could have taken (filing an additional grievance, construing the warden's action as a denial of the grievance and appealing, or seeking leave to file an additional or out-of-time grievance), and recommended dismissal of Turner's case. *Id.*  Turner objected to the recommendation, contending that "the warden's threat to ship him far away from his family had rendered his administrative remedies unavailable."  *Id*., at 1081–82.  The District Judge adopted the recommendation over Turner's objections.  *Id*. at 1082. "In doing so, the court expressed its belief that threats alone cannot make administrative

remedies unavailable and, even if they could, Turner should have taken the three actions identified by the magistrate judge." *Id*.

On appeal, the Eleventh Circuit rejected defendants' argument "that threats of retaliation, especially those that do not raise the specter of physical abuse, cannot make a remedy unavailable." *Id*. at 1084. The Eleventh Circuit joined with the Seventh and Second Circuits in holding "that it is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate." *Id*. (citing *Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006); *Hemphill v. New York*, 380 F.3d 680, 688 (2nd Cir. 2004)). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Turner*, 541 F.3d at 1084. The court noted that "[o]ne of the purposes of administrative remedies is to give prisoners a way of attempting to improve prison conditions without having to file a lawsuit." *Id*. at 1040 (citing *Woodford*, 548 U.S. at 93, 126 S. Ct. at 2387). "That purpose is thwarted if the prisoner is told that lodging a grievance will result in his overall condition becoming worse instead of better." *Id*. The court concluded:

> [A] prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy 'unavailable,' and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

*Turner*, 541 F.3d at 1085 ( citations omitted ).

<u>Application of the Law to the Facts of this Case</u>

The parties agree that plaintiff did not utilize the prison grievance system to exhaust his claims prior to filing this lawsuit.  (Doc. 58; Doc. 63, p. 3 ("Plaintiff has been, and continues to be, prevented from pursuing, filing, obtaining and conforming to the F. D. O. C.'s administrative procedure's [sic], pertaining to filing of a grievance, concerning the claims at issue in this cause. . . .")).  Plaintiff argues that the prison grievance system was "unavailable" to him under *Turner*, due to defendants' threats.  Plaintiff's factual allegations in support of "unavailability" are these.  Plaintiff's fourth amended complaint alleges that on October 10, 2009, the day after plaintiff passed out and fell, defendants Payne and Halley visited plaintiff in the medical ward.  (Doc. 41, p. 6A ¶ 11).  According to plaintiff:

> [Plaintiff] was then visited by both defendants Payne and Halley and threatened with being placed in confinement if he kept complaining about the conditions of his confinement and improper medical treatment.  Both Payne and Halley told plaintiff that he was faking his injuries and pre-existing medical conditions, and if his sister [Mary Moore] kept calling Tallahassee, and Century Corrections Officials, plaintiff would get no medical treatment, and be placed in confinement thus eliminating any grievance process for plaintiff by the threats described herein.
>
> Plaintiff relayed to his sister Mary Moore the events that occurred, during the times mentioned above, and that he was not getting proper medical treatment, and he was still being forced to work in the kitchen contrary to treatment once prescribed.  Mary Moore again contacted defendants Cason, Washington, Brown, Payne and Halley, and was told multiple different stories as to why plaintiff was assigned to the kitchen and denied medical treatment, and was told there was nothing in his medical file about his pre-existing conditions.

(Doc. 41, p. 6A ¶¶ 11-12).  Plaintiff essentially reiterates these allegations in his

responsive affidavit.  (Doc. 63, Ex. A, Toler Aff.).  Plaintiff's affidavit states that since September of 2007, plaintiff has complained to prison officials about the conditions of his confinement and conveyed his complaints to family members who also complained to prison officials; that plaintiff's sister Mary Moore personally contacted the defendants on several occasions and complained about plaintiff's conditions of confinement; and that each defendant told plaintiff his conditions would become worse if he continued to complain or if plaintiff's family members continued to complain.  (Doc. 63, Ex. A, Toler Aff. ¶¶ 3-5).  With regard to the alleged October 10, 2009 visit from defendants Halley and Payne, plaintiff asserts:  Warden Halley and Deputy Warden Payne personally visited me in the hospital medical unit and told me if I continued to complain about my treatment at Century Prison, and continued to have my family members contact them about those hazardous conditions . . . my good conduct transfer would not be honored, and my treatment and overall conditions would become worse."  (*Id.*, ¶ 8).  Plaintiff states that he is now assigned to an outside maintenance crew, which is an even more arduous job than the kitchen.  (*Id.*, ¶ 9).

Construing the allegations of plaintiff's fourth amended complaint and affidavit as true, the Court concludes that the administrative grievance process was not made unavailable to plaintiff by defendants' alleged threats and retaliation.  Plaintiff asserts he was threatened and retaliated against, but does not say those threats were the cause of his not utilizing the administrative grievance process.  Instead, plaintiff appears to argue that the alleged retaliation and threats rendered the administrative process *per se* unavailable.  (*See* Doc. 63, p. 1 ("Plaintiff was prevented from filing any grievances, and such remedies were made unavailable to him, once defendant's [sic]

stated to plaintiff that if he kept complaining about the conditions, his overall conditions would become worse . . .")).  That was not *Turner*'s holding.  *Turner* requires not only that a substantial threat be made, but also that the threat <u>actually deter the inmate from filing a grievance</u>.  Plaintiff does not indicate that Halley's and Payne's threat seriously discouraged plaintiff from grieving the incidents at issue here.  Further, despite the alleged threat which, according to plaintiff, was a broad threat that plaintiff would be placed in confinement (or not allowed a good conduct transfer) if plaintiff or plaintiff's sister complained about plaintiff's conditions of confinement, the October 9, 2009 incident, or the lack of medical care, plaintiff did not hesitate to complain to his sister whom he knew would complain to the defendants.  In other words, Halley's and Payne's alleged threat did not dissuade plaintiff from engaging in the conduct Halley and Payne prohibited.  Plaintiff's access to the grievance process was not made unavailable by defendants' conduct.

Plaintiff alternatively argues that even if the grievance process was available to him, dismissal is inappropriate because:  "defendant's records of plaintiff's complaint's [sic] are incorrect and can not warrant proof of unexhausted available remedies while the plaintiff and family members were constantly complaining about the conditions of his confinement for several years as stated in his complaint." (Doc. 63, p. 4).  The Court is not constrained to consider only defendants' records in determining whether plaintiff failed exhaust his administrative remedies.  Plaintiff's verified pleadings, response to defendants' motion to dismiss, and sworn affidavit admit that plaintiff did not utilize, or even attempt to utilize, the administrative grievance process to exhaust the claims plaintiff now seeks to litigate.  Secondly, to the extent plaintiff implies that his and his family's verbal or other complaints made

outside the structure of the administrative grievance system were sufficient to meet the exhaustion requirement, plaintiff is incorrect.  The law of this Circuit is clear that the PLRA's exhaustion requirement requires proper exhaustion through the administrative grievance procedure created by the agency (the Florida DOC), including compliance with the agency's deadlines and other critical procedural rules. *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (holding that "when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit"); *accord Woodford*, 548 U.S. at 94, 126 S. Ct. at 2387-88 ("Requiring proper exhaustion . . . gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors.  This is particularly important in relation to state corrections systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."); *Woodford* at 90-91, 126 S. Ct. at 2386 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings); *see also, e.g., Schlicher v. Fla. Dep't of Corr.*, 399 F. App'x 538 (11th Cir. 2010) (rejecting prisoner's arguments that the efforts he made, including writing letters to the Secretary of the FDOC, a federal judge, and the inspector general, and making verbal complaints to various prison officials, were sufficient to satisfy the exhaustion requirement).

CONCLUSION

Plaintiff failed to exhaust available administrative remedies under § 1997e(a) as to all of the claims presented here, including those against defendant Cason. Defendants are entitled to have this case dismissed.

Accordingly, it is respectfully RECOMMENDED:

1.  That defendants' motion to dismiss (doc. 58) be GRANTED.

2.  That this case be DISMISSED WITHOUT PREJUDICE for plaintiff's failure to exhaust available administrative remedies.

3.  That the Clerk be directed to close the file.

At Pensacola, Florida this 12th day of January, 2012.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).